IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TORINA A. COLLIS** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | |
| | * | Civil No. PJM 06 CV 2451 |
| **BANK OF AMERICA, N.A.,** | * | |
| | * | |
| Defendant | * | |

FILED ____ ENTERED
LODGED ____ RECEIVED

SEP 2 6 2007

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ____ DEPUTY

## MEMORANDUM OPINION

Defendant Bank of America has filed a Motion to Dismiss or, in the alternative, Motion to Reconsider the Court's April 23, 2007 Paperless Order, which granted Plaintiff Torina A. Collis' Motion to Reissue Summons for Defendant. The Motion disputes that ongoing settlement discussions in this case constituted "good cause" to extend the 120-day period for service of process under Federal Rule of Civil Procedure 4(m). Having heard argument, the Motion is DENIED.

### I.

Federal Rule of Civil Procedure (FRCP) 12(b)(5) permits a court to dismiss a plaintiff's complaint for insufficient service of process. Defendant here argues that FRCP 4(m) requires that, upon the motion of a party or upon the Court's own motion, a complaint be dismissed if it is not served within 120 days of the filing of the complaint, absent a showing of good cause on the part of the plaintiff. *See* Def.'s Mem. in Supp. M. to Dismiss 2-3 (citing *Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 438-39 (D. Md. 2001) (citing *United States v. Britt*, 170 F.R.D. 8 (D. Md. 1996); *Mendez v. Elliott*, 45 F.3d 75, 78-79 (4th Cir. 1995)).

In *Henderson v. United States*, the Supreme Court stated that the 1993 revisions to the Federal Rules of Civil Procedure accorded district courts discretion to enlarge the 120-day period for service, even absent good cause. 517 U.S. 654, 662-63 (1996).[1]

Even if a good cause showing is required, however, the fact that the parties have been engaged in settlement negotiations may be considered good cause justifying an extension.[2] As this Court indicated in *Braithwaite v. Johns Hopkins Hospital*:

> "Good cause" in the context of Rule 4(m) and its predecessor Rule 4(j) has been defined in a number of instances. The one example provided by the legislative history is a defendant's evasion of service. *See* 1982 U.S.C.C.A.N. 4434, 4446 n.25. Other examples include instances where, due to a clerk's negligence, a summons was not issued timely, *cf. Abdel-Latif v. Wells Fargo Guard Serv., Inc.*, 122 F.R.D. 169, 174 (D.C.N.J. 1988); the Marshal's Office failed to effect service, *see Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990), *or perhaps where the parties were engaged in good faith settlement discussions. Cf. Mendez, supra.*

160 F.R.D. 75, 77 (D. Md. 1995)(emphasis added).

At the June 1, 2007 hearing before the Court on the Motion to Withdraw filed by Plaintiff's former counsel, Rex Fuller, III, Esquire, former counsel stated that service in this case was delayed

---

[1] For a case questioning the of the validity of the good cause requirement, see *Knott v. Atlantic Bingo Supply, Inc.*, No. JFM-05-1747, 2005 WL 3593743, at *1, n.1 (D. Md. Dec. 22, 2005).

[2] Defendant cites *Leonard v. Stuart-James Company, Inc.*, 742 F. Supp. 653, 662 (N.D. Ga. 1990), in support of its argument that engagement in settlement negotiations is insufficient as a matter of law to show good cause or excusable neglect. Apart from the non-binding effect of that case in this Court, the court in *Leonard* did not announce a per se rule but rather, while recognizing circumstances in which settlement negotiations may constitute good cause for an extension of the service period, found such circumstances not to exist in the case before it. *Id.* Here, significantly, the evidence indicates that the parties had agreed not to file additional papers during settlement negotiations.

by agreement of the parties in order to accommodate settlement negotiations. Mot. Hr'g Tr. 30 ("[The Title VII case] was filed while we were settling or I thought we were settling and service was not made only for the reason that we had agreed not to go forth with any, any further paperwork while we were discussing possible settlement.").

Indeed, in support of its Motion to Dismiss or, in the alternative, for Reconsideration of the Court's April 23, 2007 Paperless Order, Defendant itself states, "at the time Plaintiff filed her Complaint, the parties were engaged in settlement negotiations regarding all of her claims against Defendant, including those raised in this matter." Def.'s Mem. in Support M. to Dismiss at 1. In addition, at the June 1, 2007 hearing, defense counsel indicated that:

> After the SOX[A] and FLSA [claims] were both filed, I spoke with Mr. Fuller and we agreed to mediate it. I understood at that point that Ms. Collis was in fact interested in talking about settlement. We went before Magistrate Judge Day. . . . We didn't end up resolving it and that was the end of November. Thereafter in December through January, Mr. Fuller and I exchanged numerous phone calls and letters with settlement offers and demands back and forth.

Mot. Hr'g Tr. 14-15. In response to the Court's inquiry at oral argument as to the scope of settlement negotiations, defense counsel confirmed that they included all three of Plaintiff's cases against Defendant. Mot. Hr'g Tr. 16 ("On that note, because when we went to settlement Mr. Fuller and I had discussed how if we were going to be able to settle anything, it was going to be a global settlement of all of Ms. Collis' claims against the bank.").

While Plaintiff's testimony suggests that she questioned the value of settlement negotiations, she also testified that she participated in mediation, that her counsel encouraged her to consider settlement, and that she reviewed settlement offers with counsel before ultimately rejecting them.

*See* Mot. Hr'g Tr. 6-7. In addition, as demonstrated by defense counsel's own statement, the parties exchanged multiple offers and demands over a period of months. Mot. Hr'g Tr. at 15. Although settlement was not reached, the Court finds that the parties engaged in good faith negotiations and, therefore, good cause existed to enlarge the 120-day period for service of process.[3]

## II.

Defendant submits that even if extension of the 120-day period for service of process is appropriate, Plaintiff must still demonstrate excusable neglect for failing to file a motion requesting an extension of the service period. Def.'s Mem. in Supp. M. to Dismiss 2-3 (citing *Knott v. Atlantic Bingo Supply, Inc.*, No. JFM-05-1747, 2005 WL 3593743, at *1 (D. Md. Dec. 22, 2005) (quoting Fed. R. Civ. P. 6(b)). Plaintiff responds that any failure on her part to file was "excusable neglect." The Court agrees with Plaintiff.

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, the Supreme Court articulated the following standards for considering excusable neglect: "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." 507 U.S. 380, 395 (1993). Although *Pioneer* involved a bankruptcy procedural rule, the Fourth Circuit has indicated that the test has general application. *See, e.g., Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996) (holding the *Pioneer* test for excusable neglect as applicable to Fed. R. App. P. 4(a)(5)); *United States v. Britt*, 170 F.R.D. 8, 9 (D. Md. 1996) (applying the excusable neglect

---

[3] The instant case is distinguishable from *Mendez*, in which the Fourth Circuit affirmed the District Court's holding that good cause for an extension did not exist where the plaintiff made no good faith attempt to engage in serious settlement negotiations with any of the defendants prior to the date on which the service period lapsed. *Mendez*, 45 F.3d at 79-80. In contrast, as defense counsel concedes, counsel exchanged settlement offers and demands over several months during the service period. *See* Mot. Hr'g Tr. 14-15.

standard of Federal Rule of Appellate Procedure 4(a)(5) to Federal Rule of Civil Procedure 4(m)) (citing *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996)).

Plaintiff filed her Complaint on September 21, 2006, such that prior to the Court's Paperless Order directing reissuance of the summons, the 120-day period for service of process was set to expire in mid-to-late January 2007. As discussed above, however, the parties were engaged in settlement negotiations as early as November or December 2006 as to all of Plaintiff's claims against Defendant, including her Title VII claim, her claim in the instant case. Furthermore, the testimony of Plaintiff's former counsel indicates that counsel for both parties agreed that they would not file additional paperwork during settlement negotiations. Defendant argues that Plaintiff's counsel "could have served Bank of America with process and stipulated that the time for Bank of America to file an answer or other responsive pleading was stayed until such time as the parties concluded that settlement would not be feasible." Def.'s Mem. in Supp. M. to Dismiss 5. But the agreement between counsel "not to file papers during settlement negotiations" could reasonably have been understood to include the filing of a motion to extend the service period, as well as any other stipulations as to service of process, including the timetable for responsive pleadings. Defense counsel states that settlement negotiations effectively ended on March 20, 2007 when, coincident to his filing a Motion to Withdraw, Plaintiff's then counsel notified defense counsel that Plaintiff was not interested in settling any of her claims against Defendant. Mot. Hr'g Tr. 15. This statement suggests that counsel's agreement not to file additional paperwork in the case extended even beyond the 120-day service period.

Defendant has not claimed that it was prejudiced by the delay in service of process.[4] Moreover such delay as there has been will have virtually no impact on the proceedings. Plaintiff had reason to rely on defense counsel's agreement not to exchange paperwork while settlement was being pursued. She acted at all times in good faith. The Court thus concludes that Plaintiff has satisfied the excusable neglect test articulated in *Pioneer*. Her failure to file a motion for extension of time prior to expiration of the original 120-day service period did not preclude the reissuance of summons.

### III.

For these reasons, the Court DENIES Defendant Bank of America's Motion to Dismiss [Paper No. 17]. To the extent the motion requests reconsideration of this Court's April 23, 2007 Paperless Order granting Plaintiff's Motion to Reissue Summons, it is also DENIED.

A separate order accompanies this Memorandum Opinion.

September 25, 2007

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[4] Defendant argues that lack of prejudice to a defendant does not excuse a plaintiff's failure to effectuate service within the 120 period. Def. Mem. Supp. M. to Dismiss 5 (citing *Quann v. Whitegate-Edgewater*, 112 F.R.D. 649, 660 (D. Md. 1986)). However, in *Quann* the court considered the issue of lack of prejudice within the context of whether plaintiff had made reasonable and diligent attempts at service within the 120 period and whether plaintiff's failure to file a motion requesting an extension of time for service was evidence of lack of diligence. *Id.* at 660-61. The court stated that "the absence of prejudice is *not* of aid to a faulty plaintiff who presents no justifiable reason for his lack of diligent and timely conformance," *id.* at 660, and "this case would appear to boil down to inadvertence on the part of counsel–a factor which in and of itself does not constitute good cause. . . ." *Id.* at 662. In contrast, in the present case any delay in service of process or in filing a motion for an extension was justified by counsel's agreement that no additional paperwork be filed during settlement negotiations.